

**IT IS ORDERED as set forth below:**

**Date: October 6, 2017**

_____

**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | |
|---|---|
| IN RE: | |
| HUTCHESON MEDICAL CENTER, INC., et al., | CASE NO. 14-42863-PWB |
| Debtor. | CHAPTER 11 |
| RONALD L. GLASS, in his capacity as Chapter 11 Trustee of Hutcheson Medical Center, Inc. and its affiliated debtors, | |
| Plaintiff, | |
| v. | ADVERSARY PROCEEDING NO. 16-4091-PWB |

MILLER & MARTIN, PLLC,

Defendant.

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING DEFENDANT'S MOTION TO TRANSFER VENUE

Ronald Glass, in his capacity as Chapter 11 Trustee for Hutcheson Medical Center, Inc. ("HMC"), seeks to recover damages related to legal services that Miller & Martin, PLLC, provided to HMC prior to its bankruptcy filing. Miller & Martin seeks to transfer venue of this proceeding to the Eastern District of Tennessee on the ground that a forum selection clause contained in the parties' engagement letter requires the lawsuit to proceed there; the Trustee opposes the transfer.

**Jurisdiction of the District Court and Authority of the Bankruptcy Court**

This proceeding relates to the Chapter 11 bankruptcy case of Hutcheson Medical Center, Inc. As such, the District Court for the Northern District of Georgia has jurisdiction of it under 28 U.S.C. § 1334(b).

Pursuant to 28 U.S.C. § 157(a) and LR 83.7, ND Ga., the District Court has referred this proceeding to the Bankruptcy Court. This proceeding involves a claim for damages under nonbankruptcy law and is not a "core proceeding"

within the meaning of 28 U.S.C. § 157(b)(2)(B).  It is, therefore, a non-core proceeding.

Under 28 U.S.C. § 157(c), this Court has authority to hear, but not to determine, a non-core proceeding, unless all of the parties consent to this Court's determination of it under 28 U.S.C. § 157(c)(2).  Miller & Martin has not consented and has expressly objected.

In a non-core proceeding, 28 U.S.C. § 157(c)(1) instructs this Court to submit proposed findings of fact and conclusions of law to the District Court for its de novo review and requires the District Court to enter "any final order or judgment."  Some courts have ruled that a bankruptcy court has authority to enter an order on a motion to transfer venue in a non-core adversary proceeding.[1]  An opposite view is that a bankruptcy judge cannot decide a venue transfer motion.[2]

---

[1] *E.g., Walker v. Directory Distribution Associates, Inc. (In re Directory Distributing Associates, Inc.)*, 566 B.R. 869, 875-76 (Bankr. S. D. Tex. 2017); *DHP Holdings II Corp. v. The Home Depot (In re DHP Holdings II Corp.)*, 435 B.R. 264 (Bankr. D. Del. 2010).

[2] *In re Retirement Inn at Forest Lane, Ltd.*, 83 B.R. 795, 799 (D. Utah 1988) (en banc) (Bankruptcy court should hear motion to transfer venue and submit proposed findings of fact and conclusions of law to the district court); *Moody v. Empire Life Ins. Co. (In re Moody)*, 46 B.R. 231, 234 (M.D.N.C. 1985) (assuming that only the district court may order a transfer of venue); *Armstrong v. Rainier Fin. Services Co. (In re Greiner)*, 45 B.R. 715, 716 (Bankr. N.D. 1985) (Bankruptcy court has no authority to transfer venue.).

The Court concludes that the appropriate approach in a non-core proceeding is for the Court to submit proposed findings of fact and conclusions of law to the District Court for its de novo review and entry of an order on the motion.[3]   This procedure is consistent with the general concept of 28 U.S.C. § 157(c) that district courts determine non-core matters.  In addition, it insures the availability of effective – and more expeditious – district court review of this Court's action.[4]

Accordingly, this Order constitutes the Court's proposed findings of fact and conclusions of law that this Court submits to the District Court for its de novo review and entry of an appropriate order.

## Summary

The venue issue is a legal one.  The Court's analysis begins with a statement in Part I of the facts and procedural background relating to the parties' dispute.  Part II discusses the applicable law with regard to transfer of

---

[3] *Accord, cf. In re Retirement Inn at Forest Lane, Ltd.,* 83 B.R. 795, 799 (D. Utah 1988) (en banc) (Bankruptcy court should hear motion to transfer venue and submit proposed findings of fact and conclusions of law to the district court).

[4] This Court's entry of an order would be subject to appeal, but pending appeal the litigation would proceed unless either the District Court or this Court stayed it pending appeal. Under the Court's approach, District Court review necessarily occurs before the transfer.

venue in bankruptcy proceedings, and Part III states the positions of the parties. Part IV contains the Court's analysis of the venue issue.

Based on the Court's findings of fact and conclusions of law as proposed below, Miller & Martin's motion to transfer should be granted.[5]

## I.    Background

In 1947, the governing authorities of Walker, Dade and Catoosa Counties, Georgia, established the Hospital Authority of Walker, Dade and Catoosa Counties ("Hospital Authority") created under the Georgia Hospital Authorities Law, O.C.G.A. § 31-7-70.  In 1995, the Hospital Authority created Hutcheson Medical Center ("HMC") to provide hospital services, medical care, and other health-related services in the Northwest Georgia region.  HMC operated a medical center in Fort Oglethrope, Georgia known as Hutcheson Medical Center that included a 179 bed hospital, a nursing home, and a child care facility. All facilities were located in Georgia.

---

[5] Miller and Martin also filed a motion to dismiss this proceeding.  The Court will stay disposition of the motion to dismiss pending the District Court's de novo review of this Court's proposed findings of fact and conclusions of law and its entry of an appropriate Order.  It is not appropriate for this Court to rule on the motion if this proceeding is to be transferred to the Eastern District of Tennessee.  The court where venue is placed should consider dispositive motions.

The Hospital Authority owned most of the land and buildings that comprised Hutcheson Medical Center (the "Medical Center Property").  HMC, however, operated and controlled the Medical Center Property under a lease with the Hospital Authority.  Under the lease, substantially all of the assets and liabilities (other than land and buildings) related to the medical center, nursing home, and child care facility, were transferred to HMC. The lease provided that HMC would have the right of first refusal to buy the land and buildings; that any sale to a third party could only be made expressly subject to the lease; and that the Hospital Authority could not encumber any of the Medical Center Property (including the nursing home and child care facility) without HMC's express written permission.

After experiencing financial difficulties for some time, 2011, the Hospital Authority and HMC in 2011 sought proposals from entities experienced in managing hospitals.  The Chattanooga-Hamilton County Hospital Authority d/b/a Erlanger Health System ("Erlanger") submitted a proposal to provide capital and to take over management of Hutcheson Medical Center pursuant to a management agreement to be negotiated among the counties, the Hospital Authority, HMC and Erlanger.

On February 16, 2011, HMC retained Miller & Martin to represent it in the negotiations and drafting of the management agreement and related documents.

The Trustee contends that Miller & Martin had previously represented Erlanger in unrelated matters and that it was aware of the interdependent relationship between HMC and the Hospital Authority.

As part of the deal to take over management of Hutcheson Medical Center, Erlanger agreed to provide the Hospital Authority and HMC with a $20 million line of credit to be used for working capital, debt service and expenses. The parties agreed that certain parts of the Medical Center Property would secure HMC's repayment obligation and negotiated over which properties would be included as collateral.

On March 3, 2011, negotiations began about which properties would be collateral for the loan. Erlanger wanted as much collateral as possible, but by March 14, Erlanger agreed to take only the main hospital campus. Ward Nelson, a Miller & Martin partner, advised a fellow partner to revise the documents accordingly. This message, in turn, was forwarded to a paralegal with instructions to revise the legal documents.

Thus, according to the Trustee, by March 14, 2011, all parties understood that Erlanger would receive a  deed to secure debt on the hospital campus, but not on the nursing home or child care facility.

7

The deed to secure debt recorded on April 26, 2011, in Catoosa and Walker Counties, Georgia, however, included not only the hospital campus but also the nursing home and child care facility as collateral in its legal descriptions. The Trustee contends that HMC did not give express permission to include these parcels and that Miller & Martin did not advise HMC of its intention to do so.

In early 2014, HMC, through the Hospital Authority, sought additional financing to keep the facility operating. Regions Bank agreed to provide a $4,000,000 loan secured by a deed to secure debt on the nursing home.

On February 27, 2014, Erlanger filed suit against the Hospital Authority and HMC in the United States District Court of the Northern District of Georgia, 4:14-cv-00040-HLM, to recover all principal, interest and late fees due on the line of credit note.

In March 2014, before the Regions Bank loan closed, the Trustee alleges HMC and the Hospital Authority learned for first time that the nursing home and child care facility had been encumbered in the Erlanger transaction. Because of Erlanger's prior encumbrance on the nursing home, Regions Bank refused to make the loan.

On November 20, 2014, HMC filed its chapter 11 petition.

8

The Trustee contends that the erroneous encumbrance of certain properties had the end result of reducing the value of the Debtor's estate.

As matters progressed in HMC's Chapter 11 case, HMC as the actual beneficial owner of all of the assets involved in its medical facilities ended up with the right to sell the assets for the benefit of the estate. Erlanger's lien on the nursing home and child care center enabled it to receive $1.39 million from the sale of those assets pursuant to a negotiated settlement among the parties. If the deed to secure debt had been properly prepared, the Trustee alleges, HMC's estate would not have been required to pay Erlanger $1.39 million.

The Trustee asserts claims for damages against Miller & Martin for legal malpractice, breach of fiduciary duty, and expenses of litigation. The Trustee alleges that, contrary to the intent of the parties, Miller & Martin wrongfully included the nursing home and the child care facility in the April 26, 2011 security deed to Erlanger. As a result, the Trustee contends Miller & Martin caused HMC damages because  (1) it could not obtain funding from Regions Bank to pay its bills and prevent its "death spiral;" and (2)  HMC received $1.39 million less that it should have from the sale.

Both the Trustee and Miller & Martin have made a jury demand. [Docs. 3, 8]. In addition, Miller & Martin "expressly withholds its consent to conduct the jury trial before the Bankruptcy Court." [Doc. 8].

Three months after the filing of the complaint and after the District Court denied the motion to withdraw the reference, Miller & Martin filed motions to transfer venue and to dismiss this action.[6]

Miller & Martin contends that venue in the Northern District of Georgia is improper and that this action must be transferred to the Eastern District of Tennessee based upon a forum selection clause contained in its engagement letter with HMC. The provision provides [Doc.15-2, Exh. A, page 5]:

> Any claim, dispute or legal proceeding arising out
> of or relating to M&M's engagement may be brought
> in any state or federal court within Hamilton County,
> Tennessee, and Client irrevocably submits to the
> exclusive jurisdiction of such court in any such legal
> proceeding; waives any objection Client now or
> hereafter may have to the venue or to the
> convenience of the forum; agrees that all claims in

---

[6] This order addresses only the motion to transfer venue for reasons discussed in note 5, *supra.*

respect of such proceedings shall be heard and

determined only in any such court; and agrees not to

bring any such proceeding arising out of or relating

to M&M's engagement in any other court.

Part III discusses the parties' positions in further detail. In summary, Miller & Martin asserts that its forum selection clause is binding and enforceable and not subject to any exception that would otherwise permit invalidation. In opposition, the Trustee contends that (1) transferring the case would contravene public policy; and (2) Miller & Martin has waived its right to invoke and enforce the forum selection clause.

## II.    Applicable Law on Transfer of Venue

As discussed earlier, 28 U.S.C. § 1334(b) vests jurisdiction over proceedings related to a bankruptcy case in the district courts, and 28 U.S.C. § 157(a) permits a district court to refer all such proceedings to the Bankruptcy Court. Like all other district courts, the District Court for the Northern District of Georgia, LR 83.7, ND Ga., and the District Court for the Eastern District of Tennessee, Standing Order (E.D. Tenn. July 11, 1984), automatically refer all bankruptcy cases and proceedings within its bankruptcy jurisdiction to the Bankruptcy Court.

Provisions for venue of bankruptcy cases and proceedings are in 28 U.S.C. §§ 1408, 1409, 1410, and 1412. The bankruptcy venue statutes prescribe the district court in which venue is proper for bankruptcy cases (§ 1408), for bankruptcy proceedings (§ 1409), and for cases ancillary to foreign proceedings (§ 1410), and permit the district court to transfer a bankruptcy case or proceeding to another district (§ 1412).

By virtue of the automatic reference by the district courts of bankruptcy cases and proceedings to the bankruptcy courts, bankruptcy cases and proceedings are filed in the bankruptcy courts, even though the district courts have jurisdiction. Similarly, it is ordinarily the bankruptcy court, under its authority to exercise the jurisdiction of the district court, that transfers venue. And if venue is transferred, the transfer is to the bankruptcy court for the district to which the case or proceeding is transferred. In bankruptcy practice, the term "district court" in the venue statutes ordinarily means "the bankruptcy court, by reference from the district court."

An initial question is whether the bankruptcy venue transfer provisions in 28 U.S.C. § 1412 apply in a non-core proceeding.

28 U.S.C. § 1412 provides that a district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of

12

justice or for the convenience of the parties."  Some courts have ruled that,

because this statute applies to a proceeding *under title 11*, it does not apply to a

non-core proceeding, which does not *arise under* title 11 but is only *related to* a

case under title 11.  Under this view, the venue transfer provisions of 28 U.S.C.

§ 1404(a), the statute applicable generally in federal civil actions, provides the

applicable authority for transfer of venue in a non-core proceeding.[7]

Other courts conclude that § 1412 is a bankruptcy-specific provision that

applies to all proceedings within the district court's bankruptcy jurisdiction,

including non-core proceedings that are "related to" a bankruptcy case.[8]

Section 1404(a) permits transfer of venue "for the convenience of parties

and witnesses, in the interest of justice," whereas § 1412 allows transfer "in the

interest of justice or for the convenience of the parties."  Both, thus, require

consideration of the convenience of the parties and the interest of justice.

Courts on both sides of the issue conclude that the standards for transfer of

venue are substantially the same under both provisions and that whether one or

---

[7] *E.g., Searcy v. Knostman*, 155 B.R. 699, 706-07 (S.D. Miss. 1993) (citing
cases); *Longhorn Partners Pipeline L.P. v. KM Liquids Terminals, L.L.C.*, 408
B.R. 90, 97 (Bankr. S.D. Tex. 2009).

[8] *E.g., Campbell v. Williams*, 2015 WL 3657627 at *2 (S.D. Tex. 2015); *Dunlap
v. Friedman's, Inc.,* 331 B.R. 674 (S.D. W. Va. 2005) (citing cases and
discussing split of authority).  *See also General Instrument Corp. v. Financial
and Business Services, Inc.,* 62 B.R. 361 (Bankr. N.D. Ga. 1986) (applying
§ 1412 without discussion of the issue).

the other applies is not outcome-determinative.  Because the Supreme Court's ruling in *Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for the Western District of Texas*, ___ U.S. ___, 134 S.Ct. 568 (2013), governs determination of the issue here regardless of whether § 1404(a) or § 1412 applies, the Court need not choose which view is the better one.

In *Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for the Western District of Texas*, ___ U.S. ___, 134 S.Ct. 568 (2013), the Supreme Court analyzed the enforcement of a forum selection clause in the context of 28 U.S.C. § 1404. The Court explained that the appropriate way to enforce a forum selection clause is through the doctrine of forum non conveniens codified in § 1404.

The Court held, "When the parties have agreed to a valid forum selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atlantic Marine*, 134 S.Ct. at 581.

The Court further explained that a valid forum selection clause requires a court to alter its venue transfer analysis in three ways.

First, the burden shifts to the plaintiff to show that a forum selection clause is unenforceable. *Atlantic Marine*, 134 S. Ct. at 581 ("[T]he plaintiff's choice of

14

forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted.").

Second, a court evaluating a defendant's motion to transfer based on a forum-selection clause may not consider arguments about the parties' private interests because "when parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id*. at 582. As a result, a court should consider public interest factors only.

Third, when a party bound by a forum-selection clause files suit in a different forum, a transfer of venue will not carry with it the original venue's choice-of-law rules because "not only would it be inequitable to allow the plaintiff to fasten its choice of substantive law to the venue transfer, but it would also encourage gamesmanship." *Id*. at 583. Thus, the court in the transferee venue should not apply the choice of law rules of the transferor venue to which the parties waived their right.

The Eleventh Circuit has stated, "Forum selection clauses are presumptively valid and enforceable unless the plaintiff makes a strong showing that

enforcement would be unfair or unreasonable under the circumstances."
*Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009).

The Eleventh Circuit has also explained that a forum selection clause is unenforceable when: "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Rucker v. Oasis Legal Fin.*, 632 F.3d 1231, 1236 (11th Cir. 2011) (*quoting Krenkel*, 579 F.3d at 1281).

In a "non-core" proceeding in a bankruptcy case that presents a dispute that is purely a state law claim, a forum selection clause is enforceable to the same extent it is enforceable in a nonbankruptcy matter. *See In re Exide Technologies*, 544 F.3d 196, 218 (3rd Cir. 2008).

### III.    The Contentions of the Parties

Miller & Martin contends that the forum selection clause in its engagement letter is valid and enforceable and mandates transfer of this proceeding to the Eastern District of Tennessee under the Supreme Court's holding in *Atlantic Marine Constr. Co., v. U.S. Dist. Ct. for Western Dist. Of Texas*, __U.S.__, 134 S.Ct. 568 (2013). It contends that the Trustee cannot carry his burden of

rebutting the presumption of validity of the forum selection clause by establishing the existence of "extraordinary circumstances" that *Atlantic Marine* requires for denial of the motion to transfer venue.  Specifically, Miller & Martin argues that none of the four reasons for denial  of enforcement of a forum selection clause that the Eleventh Circuit identified in *Rucker v. Oasis Legal Fin.*, 632 F.3d 1231, 1236 (11th Cir. 2011), exists here.

First, Miller & Martin asserts that there is no evidence of fraud or overreaching on its part in the negotiation of the forum selection clause.  It observes that such clauses are standard practice and that the agreement was between sophisticated parties, a law firm and a large medical facility.

Second, Miller & Martin argues  that the Trustee cannot contend that he would be deprived of his "day in court" due to unfairness or inconvenience in view of the explicit waiver in the forum selection clause to the "convenience of the forum."   Moreover, although the Eleventh Circuit in *Rucker* listed this consideration as a basis for disregarding a forum selection clause, the Supreme Court's later ruling in *Atlantic Marine* removes a party's private interest as an issue material to enforcement of the clause.

Third, Miller & Martin challenges the notion that transfer to the Eastern District of Tennessee would deprive the Trustee of a remedy in this proceeding.

The Trustee may not have a remedy if the Tennessee court applies Tennessee law and concludes that the Tennessee statute of limitations bars his claims for legal malpractice and breach of fiduciary duty.  Miller & Martin contends that such an outcome is not the equivalent of a lack of "remedy."  The Trustee's claims of legal malpractice and breach of fiduciary duty are claims equally recognized under the substantive law of both Tennessee and Georgia, Miller & Martin observes, so the Trustee has a remedy, even if a statute of limitation may now bar their assertion.  The Trustee does not contest Miller & Martin's argument on this point.  In any event, *Atlantic Marine* suggests that the statute of limitation issue would not be determinative of this motion.  *Atlantic Marine*, 134 S.Ct. at 582-583.

Further, Miller & Martin points out that, to the extent the Trustee has filed his action in Georgia to avoid application of the Tennessee limitation period, failure to enforce the forum selection clause would reward forum-shopping.

Finally, Miller & Martin asserts that enforcement of the forum selection clause does not contravene public policy.  None of the traditional factors such as administrative difficulties and court congestion, local interests of the claims asserted, or the interest in having a trial in a diversity case conducted in a forum familiar with the law, exist.

The Trustee asserts two grounds in opposition to transfer to the Eastern District of Tennessee.

First, the Trustee contends that enforcing the forum selection clause and transferring the case to the Eastern District of Tennessee would contravene public policy. He emphasizes two public policy grounds in his opposition: court congestion and the local interest in having local controversies decided in a home forum.

The Trustee asserts that the administrative difficulties flowing from court congestion weighs in favor of this Court's retention of the proceeding.  Namely, the Trustee asserts that filing statistics factoring in judgeship caseloads and pending matters demonstrate that the Eastern District of Tennessee is more congested than the Northern District of Georgia

The Trustee further asserts that enforcement of the forum selection clause contravenes public policy because the facts, the issues, and the players in this case have a distinctly "Georgian" connection and that this local interest warrants this Court retaining venue.  The Trustee notes that the lawyers who allegedly committed malpractice are licensed to practice in Georgia; they represented HMC, a Georgia entity, in transactions involving its medical operations in Georgia; and the security deeds containing the nursing home and

19

child care center involved real estate in Georgia and were recorded in Georgia counties.

Georgia's localized interest is further enhanced, the Trustee continues, because of the jury trial waiver in the engagement letter. The Trustee contends that  Georgia law does not permit a pre-litigation contractual waiver of a right to a jury trial, but Tennessee law does.  Although both the Trustee and Miller & Martin have demanded a jury trial in this proceeding, the Trustee speculates that if venue is transferred to Tennessee, Miller & Martin will withdraw its jury trial and demand and attempt to enforce the jury trial waiver, thereby depriving HMC of a right that Georgia law guarantees.

The Trustee's second ground for opposing the motion to transfer venue is that Miller & Martin waived the forum selection clause.  The Trustee argues that it acted inconsistently with an intent to invoke the forum selection clause because (1) it selectively invoked its right to a trial by jury, notwithstanding the Engagement Letter's prohibition of it; and (2) it has substantially participated in litigation in this proceeding to the extent that its delayed request to enforce the engagement letter's forum selection clause resulted in a waiver of it.

## IV.    The Court's Proposed Findings and Conclusions

The issue is whether the forum selection clause in the engagement letter between HMC and Miller & Martin is enforceable in this non-core bankruptcy proceeding.

Before turning to the substantive issues as set forth in Part III, the Court addresses two threshold issues: (1) whether there is any significance to the forum selection clause being contained in an engagement letter as opposed to a contract; (2) whether a prepetition forum selection clause is binding on the Trustee in bankruptcy.

### A. Threshold Legal Issues

*1.   The Enforceability of a Forum Selection Clause Contained in an Engagement Letter*

The February 16, 2011 engagement letter signed by Ward W. Nelson, a Miller & Martin partner, is addressed to Ms. Martha Attaway, Chairwoman of the Board of Directors of Hutcheson Medical Center, Inc., but neither she nor any other representative of HMC signed it.

The engagement letter provides in the first sentence, "This will confirm that you have engaged Miller & Martin, PLLC ("M&M") to represent Hutcheson Medical Center, Inc. in the [Erlanger Health System Management Agreement with Hutcheson Medical Center, Inc.]. [Doc. 15-2, Exh. A at 2].  The

21

Engagement Letter goes on to set forth the terms and conditions of the engagement.

Under the circumstances, the unsigned engagement letter is enforceable against HMC under both Georgia and Tennessee law.

In *Hemispherx Biopharma, Inc. v. Mid-South Capital*, Inc., 690 F.3d 1216 (11th Cir. 2012), the Eleventh Circuit addressed the issue of whether an unsigned engagement letter is enforceable.  The court explained that, under Georgia law, a party's conduct may bind it to the terms of a contract, even if he does not sign the agreement. *See Comvest, L.L.C. v. Corporate Secs. Grp. Inc.*, 234 Ga.App. 277, 507 S.E.2d 21, 24–25 (1998).  The Eleventh Circuit concluded that Hemispherx's actions over an eight-month period, including providing information and participating in the solicitation of investors, indicated assent to the terms of the unsigned engagement letter.

Tennessee law provides that an enforceable contract must have mutual assent to its terms, be supported by sufficient consideration, be free from fraud and undue influence, be sufficiently definite, and not be contrary to public policy. *See Johnson v. Central Nat'l Ins. Co.*, 210 Tenn. 24, 356 S.W.2d 277, 281 (1961). A written contract does not have to be signed to be binding on the parties and, if an agreement is reduced to writing but is signed by only one of

the parties, it is binding on the non-signing party if that party has manifested consent to its terms. *See T.R. Mills Contractors v. WRH Enterprises*, 93 S.W.3d 861, 866 (Tenn.App. 2002) (*citing Southern Motor Car Co. v. Talliaferro*, 14 Tenn.App. 276, 1931 WL 1595, at *3, (Tenn.Ct.App. March 5, 1932) (cert.denied)).

HMC's conduct establishes assent to the terms of the engagement letter. Miller & Martin represented HMC in the Erlanger transaction as contemplated by the engagement letter, ultimately culminating in the recording of the security deeds on April 26, 2011, that are at issue here. HMC paid its legal fees as contemplated by the engagement letter. Correspondence among the parties indicates an active and engaged relationship between the parties during the time period of representation. Accordingly, under both Georgia and Tennessee law, the lack of a signature by a representative of HMC on the engagement letter does not make it unenforceable.

2. *The Binding Effect of a Prepetition Forum Selection Clause on a Bankruptcy Trustee*

Whether a trustee is bound by a prepetition forum selection clause raises two issues. The first is whether a forum selection clause is enforceable in bankruptcy at all. The second issue is, if the prepetition forum selection clause is valid and enforceable, whether the bankruptcy trustee is bound by it.

As to the first question, the key factor is that this is a non-core proceeding that does not involve substantive rights under the Bankruptcy Code. Courts have regularly concluded forum selection clauses are enforceable in non-core proceedings. *See, e.g., In re Exide Technologies*, 544 F.3d 196 (3d Cir. 2008) (holding that forum selection clause would be enforced if the claims were determined to be non-core); *Diaz Contracting, Inc. v. Nanco Contracting Corp., (In re Diaz Contracting, Inc.)*, 817 F.2d 1047 (3d Cir. 1987); *In re DHP Holdings II*, 435 B.R. 264 (D. Del. 2010); *In re Manchester, Inc.*, 417 B.R. 377 (Bankr. N.D. Tex. 2009); *In re McCrary & Dunlap Construction Co.*, 256 B.R. 264 (Bankr. M.D. Tenn. 2000).

No one disputes that the Trustee's claims for legal malpractice and breach of fiduciary duty are non-core claims.  They do not fall within the delineated list of core proceedings set forth in 28 U.S.C. § 157(b)(2), they do not invoke a substantive right  provided in title 11, and they are not claims that could arise only in a bankruptcy case.  They are prepetition state law claims that exist independently of the bankruptcy case.

Having determined that a prepetition forum selection clause is generally enforceable in a non-core proceeding, the Court considers whether it binds a bankruptcy trustee.

Section 541 of the Bankruptcy Code provides that the debtor's estate includes all "legal or equitable interests of the debtor as of the commencement of the case." "A bankruptcy trustee stands in the shoes of the debtor and has standing to bring any suit that the debtor could have instituted" when the debtor filed bankruptcy. *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1202 (11th Cir. 2003).

To what degree, however, is a trustee bound by a provision in a prepetition contract – a provision that he did not negotiate – such as a forum selection clause?

In *Giuliano v. Genesis Financial Solutions, Inc. (In re Axiant)*, 2012 WL 5614588 (Bankr. D. Del. 2012), the bankruptcy trustee filed a non-core breach of contract and unjust enrichment claim against Genesis Financial in the Delaware bankruptcy court. Genesis moved to dismiss the action on the ground that venue was improper because a forum selection clause in a prepetition contract provided for exclusive jurisdiction in the state and federal courts of Georgia and Oregon. The Trustee argued, among other things, that the forum selection clause was not enforceable as to him as it was not "freely chosen" by him.

The bankruptcy court rejected the Trustee's argument and concluded that he was bound by the forum selection clause.  The court, analogizing the issue to cases where a trustee has been found to be bound by a prepetition arbitration clause, concluded that a trustee is bound by a forum selection clause in non-core matters.  The court observed that the trustee had cited no provision of bankruptcy law that would suggest a forum selection clause is unenforceable in a non-core proceeding.

Further, the court in *Genesis Financial* rejected the trustee's public policy argument that lack of funding would make it difficult for him to litigate in another jurisdiction.  Instead, the court explained, a strong policy supports enforcement of a forum selection clause because enforcement effectuates the expectations of the parties; the trustee's economic arguments could not rebut the presumption that such clauses should be enforced in non-core matters.

The Court agrees with the *Genesis Financial* analysis.  The Trustee in this proceeding is likewise bound by the forum selection clause contained in the prepetition engagement letter between HMC and Miller & Martin.

As in *Genesis Financial*, this Court finds support for its conclusion in other courts' enforcement of arbitration clauses in non-core proceedings.

For example, in *In Re RDM Sports Group, Inc.*, 260 B.R. 905 (Bankr. N.D. Ga. 2001) (Drake, J.), the bankruptcy court concluded that the trustee was bound by a prepetition arbitration clause governing non-core claims because "arbitration clauses should be enforced in non-core proceedings unless enforcement would clash with the objectives of the Bankruptcy Code." *RDM Sports Group*, 260 B.R. at 913-914. Although the court emphasized it had discretion to make such a determination about whether arbitration would threaten the objective or purpose of the Bankruptcy Code, it found no such threat in the case. The court emphasized that the claims at issue were non-core and could exist independently of the case because they did not invoke substantive bankruptcy rights. Further, the trustee had not shown that resolution of the nonbankruptcy claims in a nonbankruptcy forum would jeopardize unique bankruptcy policies.

The enforcement of a forum selection clause in a non-core proceeding that involves a debtor-derived claim does not threaten the objectives of the Bankruptcy Code or impair the Trustee's ability to fulfill his duties. In this proceeding, the Trustee stands in the shoes of HMC with respect to its prepetition, non-bankruptcy, state law claims against Miller & Martin.

Based on the foregoing, the Court concludes that (1) the forum selection clause contained in the Engagement Letter is presumptively enforceable; and

(2) a bankruptcy trustee is presumptively bound by a prepetition forum

selection clause regarding prepetition non-core claims that do not invoke

substantive bankruptcy rights.

### B.  Whether the Forum Selection Clause Requires Transfer of this Proceeding to the Eastern District of Tennessee

The Court now turns to the issue of whether the forum selection clause

contained in the engagement letter mandates transfer of this proceeding to the

Eastern District of Tennessee.

As Part II discusses, the governing standard for venue transfer based on a

forum selection clause is set forth in *Atlantic Marine Constr. Co., v. U.S. Dist.*

*Ct. for Western Dist. Of Texas*,__U.S.__, 134 S.Ct. 568 (2013).

In *Atlantic Marine*, the Supreme Court held, "When the parties have agreed

to a valid forum-selection clause, a district court should ordinarily transfer the

case to the forum specified in that clause. Only under extraordinary

circumstances unrelated to the convenience of the parties should a § 1404(a)

motion be denied."  *Atlantic Marine*, 134 S. Ct. at 581.

Thus, under *Atlantic Marine*, the Court must determine (1) whether the

forum selection clause is "valid;" and (2) whether "extraordinary

circumstances" exist that warrant denial of transfer to the agreed upon venue. *Id*.

While the Trustee challenges the enforceability of the forum selection clause, including whether Miller & Martin has "waived" its right to invoke it as discussed herein, he does not challenge the "validity" of the forum selection clause in the sense of its existence and that it generally satisfies the provisions of a contractual agreement. Accordingly, the first prong of *Atlantic Marine* is satisfied and the forum selection clause is valid.

The question is whether "extraordinary circumstances" exist that require denial of the motion to transfer venue. The burden is on the Trustee to establish extraordinary circumstances. *Atlantic Marine*, 134 S. Ct. at 581 ("[A]s the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted.").

The Trustee opposes transfer of venue to the Eastern District of Tennessee and asserts two grounds for denial of the motion.

First, the Trustee contends that enforcing the forum selection clause would contravene public policy. He emphasizes two public policy grounds in his opposition: court congestion and the local interest in having local controversies

decided in a home forum, especially because of the right to a jury trial guaranteed by Georgia law.

Second, The Trustee opposes transfer on the theory that Miller & Martin waived the forum selection clause.  The Trustee argues that Miller & Martin acted inconsistently with an intent to invoke the forum selection clause because (1) it selectively invoked its right to a trial by jury, notwithstanding the engagement letter's prohibition of it; and (2) it has substantially participated in litigation in this proceeding to the extent that its delayed request to enforce the engagement letter's forum selection clause resulted in a waiver.

The Court examines each argument in turn.

1.  *Whether Extraordinary Circumstances Exist That Warrant Denial of the Motion to Transfer Venue*

Before *Atlantic Marine*, courts traditionally applied a multifactor test to determine whether to enforce a forum selection clause.  Those factors in the Eleventh Circuit are whether: "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy."

*Rucker v. Oasis Legal Fin.*, 632 F.3d 1231, 1236 (11th Cir. 2011) (*quoting Krenkel*, 579 F.3d at 1281).

After *Atlantic Marine*, it remains appropriate for a court to consider these factors in its determination of whether a plaintiff can demonstrate "extraordinary circumstances" exist that would warrant overriding the parties' prepetition venue agreement.

The Trustee's argument relies on public policy considerations. He has not raised issues of fraud or overreaching or lack of remedy. And as *Atlantic Marine* instructs, private issues of inconvenience or unfairness are irrelevant.

Public policy or public interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atlantic Marine*, 134 S.Ct. 568, 581 n.6.

a. Administrative difficulties flowing from court congestion

First, the Trustee contends that the "the administrative difficulties flowing from court congestion" warrant  retention of venue by this Court.  The Trustee relies on caseload statistics for the United States District Courts in the Eastern District of Tennessee and Northern District of Georgia compiled by the

United States Courts and available at http://www.uscourts.gov/statistics-reports/analysis-reports/federal-judicial-caseload-statistics. [Doc. 17, Exh. C].

The Trustee argues that this data shows that the Northern District of Georgia is the favorable venue because of its relative lack of "court congestion" when compared to the Eastern District of Tennessee. The Trustee points out that, for the year ending December 31, 2016, the Eastern District of Tennessee had 2,662 cases pending among five judges (an average of 532.4 per judge), while the Northern District of Georgia had 5,692 cases pending among eleven judges (an average of 517.5 per judge). This distinction is marginal in the Court's opinion.

The Trustee also notes that the median time in months from filing to disposition in a civil case was 6 months in the Northern District of Georgia, but 12 months in the Eastern District of Tennessee. While somewhat significant, this fact must also be considered in light of the median time in months from filing to *trial*. The data shows that the median time from filing to trial for civil cases in the Eastern District of Tennessee is 25 months and in the Northern District of Georgia is 29.2 months. In other words, on average, the time to trial in the Eastern Distract of Tennessee is marginally shorter than in this District.

The Eleventh Circuit has observed, "Although docket congestion, if proven, may be an appropriate consideration in a §1404 motion to transfer, case law does not suggest that docket congestion is, by itself, a dispositive factor." *P&S Business Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 808 (11th Cir. 2003) (*citing Jumara v. State Farm Ins., Co.*, 55 F.3d 873, 882-83 (3rd Cir. 1995); *Chrysler Credit Corp. v. County Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).).

The Trustee's data does not compel a finding of "court congestion" in the Eastern District of Tennessee such that it rises to the level of "extraordinary circumstances" warranting nonenforcement of the parties' forum selection clause.

b.  The local interest of having localized controversies decided at home

The Trustee contends that Georgia has a strong public interest in having this matter decided by the Northern District of Georgia because of the local nature of the claims and because of a Georgia party's right to a trial by jury.

The Trustee emphasizes that this case is about lawyers licensed to practice law in Georgia who committed malpractice in the course of representing a Georgia client, HMC, with respect to the allegedly negligent encumbrance of

Georgia property and the resulting recording of security deeds in two Georgia counties.

This is all true.  Nevertheless, the forum selection clause designating the state and federal courts of Hamilton County, Tennessee, was mutually agreed upon by sophisticated parties, and one must presume that they took into account the possibility of litigation in the future when agreeing to it.   The question of where and when the malpractice occurred may be a mixed question of fact and law; both Tennessee and Georgia have interests in this case that are not  easily differentiated.

The Trustee contends that a state has a strong local interest in policing the practice of law in its state.  He cites *Smith v. Yeager*, 234 F.Supp.3d 50 (D.D.C. 2017), for the proposition that such a local interest weighs in favor of a Georgia venue for this proceeding.

The Court, however, does not find *Smith* persuasive.

In *Smith*, the plaintiffs sued the defendants for legal malpractice in the District of Columbia.  The Defendants moved to transfer venue to the Eastern District of Virginia pursuant to a forum selection clause in the representation agreement.

34

The Court concluded, however, that *Atlantic Marine* did not mandate transfer because the record did not establish that the plaintiffs, in their individual capacities (as opposed to corporate officer capacities), contractually agreed to be bound by the agreement or its forum selection clause.  Because *Atlantic Marine* was inapplicable, the court considered both private and public interests of the parties.

The court emphasized that the "plaintiffs' choice of forum is entitled to deference because there is a substantial nexus between this District and the factual circumstances underlying the plaintiffs' legal malpractice allegations." *Smith*, 234 F.Supp.3d at 58.

But under *Atlantic Marine*, which governs the Court's analysis in this proceeding, the Trustee's choice of forum is given no deference and is not part of the calculus at all.  And while the *Smith* court characterized concerns regarding the quality of legal representation provided in the district as a public interest factor, this case does not stand for the proposition that this is the decisive or controlling factor.

As a result, the Court cannot conclude that the Georgia-centric nature of the case or the nature of the claims warrant negating a presumptively valid forum selection clause.

The Trustee also contends that Georgia's local interests are at stake because Georgia has a strong public interest in ensuring its citizens a trial by jury, a right that is at risk if the proceeding is transferred to the Eastern District of Tennessee.

The Trustee argues that a prepetition contractual waiver of a jury trial is unconstitutional and unenforceable in Georgia, *Bank South, N.A. v. Howard*, 264 Ga. 339, 340, 444 S.E.2d 799, 800 (1994), while such a waiver is enforceable in Tennessee. *Poole v. Union Planters Bank, N.A.,* 337 S.W.3d 771, 780 (Tenn. Ct.App. 2010).

The Trustee asserts, "If this case is transferred to the Eastern District of Tennessee, Miller & Martin likely would withdraw its jury demand and require [Trustee] to do the same under the terms of the Engagement Letter." [Doc. 17 at 14]. Doing so, the Trustee posits, would deprive HMC, a Georgia entity, of a constitutional protection.

The Court notes that the Trustee's concern about the jury trial right is based upon speculation. Both parties have departed from the terms of the engagement

letter's jury waiver clause by demanding a jury trial.  There is no indication that Miller & Martin will (or would be permitted to) withdraw its jury trial demand.[9]

But even if transfer threatens the Trustee's jury trial rights under Georgia law, that result is not a sufficient public policy concern to permit nonenforcement of the forum selection clause.  The manner of finding facts in a civil trial is a private interest under the *Atlantic Marine* analysis that is irrelevant in view of the enforceable forum selection clause.

In *Atlantic Marine*, the Court explained that "private interests" are irrelevant to a court's evaluation of a defendant's motion to transfer venue based upon a forum selection clause.  The Supreme Court further explained that, in a typical case not involving a forum selection clause, a district court considering a venue transfer motion must evaluate both the convenience of the parties and public interest considerations.  The Court explained that factors regarding private interests include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of unwilling, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make

---

[9] Even if the Trustee's concern is currently speculative, it is a valid one.  If Miller & Martin obtains transfer of venue to the Eastern District of Tennessee only to then withdraw its jury trial demand, such conduct would constitute gamesmanship that should not be rewarded.

*trial* of a case easy, expeditious, and inexpensive." *Atlantic Marine*, 134 S.Ct. at

581 n.6 (*quoting Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981))

(emphasis added).

These factors demonstrate that matters relating to the trial of a case are

private interests. The consideration of a jury trial is a private interest,

notwithstanding Georgia law that would not permit a citizen to waive its right to

one prior to litigation (even if that is the law in Georgia which this Court does

not decide). The fact that the transfer to the previously selected forum would

deny a party a jury trial right is a private right, not a public right.  And, again,

the Court emphasizes that because both parties have demanded a jury trial, the

public policy concern at this time is nonexistent.

Finally, the Court notes that the Trustee's presumption that the prepetition

jury trial waiver would be unenforceable in the Northern District of Georgia  is

not necessarily so.

While Georgia may deem prepetition jury trial waivers unenforceable, under

federal law a party may validly waive its right to a jury trial if the waiver is

knowing and voluntary.  *Bakrac, Inc. v. Villager Franchise Sys., Inc.*, 164 Fed.

Appx. 820, 823 (11th Cir. 2006).

38

In *Georgia Power Company v. Westinghouse Electric Company*, 2013 WL 12204328 (S.D. Ga. 2013), the district court, in a well-reasoned opinion, concluded that Georgia's prohibition on the enforcement of a contractual jury trial waiver did not apply in federal court because the enforcement of such a waiver is a matter of federal law, not state law.[10] The Trustee's invocation of bankruptcy jurisdiction provides an additional basis for the application of federal law.

For the foregoing reasons, the Trustee has not demonstrated that public policy interests overcome the presumptive validity of the engagement letter's forum selection clause.

*2.  Whether Miller & Martin Has Waived the Forum Selection Clause*

The Trustee argues that Miller & Martin has acted inconsistently with an intent to invoke the forum selection clause because (1) it selectively invoked its right to a trial by jury, notwithstanding the engagement letter's prohibition of it; and (2) it has substantially participated in litigation in this proceeding to the

---

[10] The Court notes that the Middle District of Georgia reached the opposite result in *GE Commercial Fin. Bus. Prop. Corp. v. Heard*, 621 F.Supp. 2d 1305 (M.D. Ga. 2009).  The Court concludes that the ruling in *Georgia Power Company v. Westinghouse Electric Company*, 2013 WL 12204328 (S.D. Ga. 2013), is more consistent with *Atlantic Marine*.

extent that its delayed request to enforce the engagement letter's forum selection clause results in a waiver.

In determining whether a party has waived its right to invoke a forum selection clause, courts often employ the test for whether a party has waived its right to invoke an arbitration clause. *E.g., Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 n.7 (11th Cir. 2012) ("Although all of the cases we cite concern the application of equitable estoppel to contracts with arbitration clauses rather than forum-selection clauses, the equitable estoppel analysis is the same. Arbitration clauses are similar to forum-selection clauses."); *CSX Trans., Inc. v. Blakeslee*, 2013 WL 1193183 (M.D. Fla. 2013).

To determine whether a party has waived its contractual right to arbitrate, a court applies a two-part test. First, it determines whether, under the totality of the circumstances, the party has acted inconsistently with the arbitration right. *Krinsk v. Suntrust Banks, Inc.*, 654 F.3d 1194 (11th Cir. 2012).  *S & H Contractors, Inc. v. A.J. Taft Coal Co*., 906 F.2d 1507, 1514 (11th Cir.1990).

Second, if a court determines that a party has acted inconsistently with the arbitration right, the court must consider whether it has in some way prejudiced the other party.  *Krinsk,* 654 F.3d at 1194.

Courts have found that a party acts inconsistently with its arbitration right when it initially pursues or participates significantly in litigation prior to demanding arbitration. *Garcia v. Wachovia*, 699 F.3d 1273 (11th Cir. 2012); *Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.*, 304 F.3d 476, 484 (5th Cir. 2002) ("Ordinarily a party waives its right to arbitrate when it initially pursues litigation and then reverses course and attempts to arbitrate"); *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990) ("A party acts inconsistently with the arbitration right when the party substantially invokes the litigation machinery prior to demanding arbitration.").

Thus, in the context of a forum selection clause, the Court must consider (1) whether, under the totality of the circumstances, Miller & Martin has acted inconsistently with the forum selection clause right; and (2) if it has, whether it has in some way prejudiced the Trustee.

a. <u>Whether Miller & Martin has participated in litigation to extent its conduct constitutes a waiver of the forum selection clause</u>

The Trustee contends that Miller & Martin's conduct in the proceeding prior to the filing of its motion to transfer venue demonstrates that it has acted inconsistently with its intent or ability to invoke the forum selection clause. The Trustee argues that Miller & Martin filed a jury trial demand and then filed

a motion to withdraw the reference asking the District Court to preside over the case. Both evidence an intent to litigate in the Northern District of Georgia.

The Trustee argues that only after the District Court denied its motion to withdraw the reference did Miller & Martin attempt to invoke the forum selection clause.  Thus, by engaging in litigation in this proceeding, the Trustee contends Miller & Martin waived its right to mandate transfer to the Eastern District of Tennessee pursuant to the forum selection clause.

The Court concludes that Miller & Martin's participation in this proceeding does not amount to an "invocation of the litigation machinery" that results in a waiver.

First, the Court notes, Miller & Martin did not "initially pursue litigation." Miller & Martin is the defendant in this action.

Second, the mere filing of the jury trial demand and the filing of the motion to withdraw the reference do not indicate an intent to waive its prepetition choice of forum. Deadlines exist for the filing of a jury trial demand (BLR 9015-1(a), NDGa) and a motion to withdraw the reference (BLR 5011-2(b), NDGa). It is not unreasonable or unexpected for a defendant to take such necessary steps to protect its rights in the first stages of an adversary proceeding. While a motion to transfer venue should be made promptly, the

42

standard for timeliness is one of equitable considerations, the very ones considered here.

Third, the timeline of this proceeding does not show delay or "reversal of course" that would warrant a conclusion that Miller & Martin waived its right to invoke the forum selection clause.

The Trustee filed his complaint on December 20, 2016. On January 3, 2017, Miller & Martin timely filed its motion to withdraw the reference and its jury trial demand. The parties briefed the motion to withdraw the reference and agreed to extend the deadlines to March 20, 2017, for Miller & Martin to answer or otherwise respond to the complaint. On February 17, 2017, the District Court promptly entered an Order denying the motion. [Doc. 13].

On March 20, 2017, Miller & Martin filed its motion to dismiss and its motion to transfer venue. The parties agreed to two stipulations to extend deadlines for response and reply. Thus, only 3 months elapsed between the filing of the complaint and Miller & Martin's motion to transfer venue. No discovery has occurred.

Comparing the facts here with those in two Eleventh Circuit cases, the Court has no difficulty concluding that Miller & Martin has not substantially

participated in litigation to a point inconsistent with seeking a transfer of venue pursuant to the forum selection in its engagement letter.

In *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507 (11th Cir. 1990), the Eleventh Circuit concluded that a party acted inconsistently with the right to arbitrate when it waited eight months to move to compel arbitration. By that time the parties had litigated two motions and the moving party had taken five depositions.

In *Garcia v. Wachovia*, 699 F.3d 1273 (11th Cir. 2012), the Eleventh Circuit concluded that Wells Fargo (as successor to Wachovia), acted inconsistently with the arbitration right in two ways. It failed to move to compel arbitration even though the district court twice invited it to file such motions. The court noted that Wells Fargo even went so far as to say that it did not intend to seek arbitration in the future. Second, the court concluded that Wells Fargo substantially invoked the litigation machinery prior to demanding arbitration because the parties conducted discovery for more than a year, during which time they conducted numerous depositions, served and answered interrogatories, and produced approximately 900,000 pages of documents.

The significant investment of time and resources devoted toward litigation, as seen in *Garcia* and *S&H Investors*, does not exist here.  Three months

elapsed between the filing of the complaint and the filing of the motion to transfer venue. No discovery has occurred. The parties have acted timely and promptly within the stipulated deadline extensions they agreed upon. Based on the foregoing, under the totality of the circumstances, Miller & Martin has not acted inconsistently with its right to invoke the forum selection clause.

### b. Whether Miller & Martin's inconsistent positions constitute a waiver

The engagement letter contains two provisions relevant here: the forum selection clause and a jury trial waiver clause. The Trustee contends that Miller & Martin's demand for a jury trial notwithstanding a clause in the engagement letter explicitly prohibiting it shows that Miller & Martin has acted inconsistently with an intent to invoke the forum selection clause. The Trustee cites no case for the proposition that waiver of one provision (the jury trial prohibition) results in waiver of another provision or nullification of the document. This argument is not dispositive or persuasive.

Because Miller & Martin has not acted inconsistently with its right to invoke the forum selection clause, it is unnecessary for the Court to consider prong 2 of the test because, as a matter of law, there can be no prejudice to the Trustee. For the foregoing reasons, Miller & Martin has not waived its right to

enforce the forum selection clause, and transfer of this proceeding to the Eastern District of Tennessee is appropriate.

## V.    Conclusion

The Court submits the foregoing as its proposed findings of fact and conclusions of law with regard to Miller & Martin's motion to transfer venue. In summary, the Court's proposed conclusions of law are that the forum selection clause in the engagement letter that governs the relationship between the parties is valid and enforceable and that the Trustee has not carried his burden of establishing the existence of extraordinary circumstances that would prevent its enforcement.  Because the forum selection clause requires litigation in the Eastern District of Tennessee, this adversary proceeding must be transferred there.

The Court proposes the following conclusion of law with regard to the relief that the motion requests:

The motion to transfer venue to the Eastern District of Tennessee is granted. Because the United States District Court for the Eastern District of Tennessee has provided for the automatic reference of bankruptcy cases and proceedings to the United States Bankruptcy Court for the Eastern District of Tennessee, this

adversary proceeding shall be transferred to the United States Bankruptcy Court for the Eastern District of Tennessee.

The Court hereby submits its proposed findings of fact and conclusions of law to the District Court for review and directs the Clerk of this Court to transmit them to the Clerk of the District Court.

END OF ORDER

**THIS ORDER IS NOT INTENDED FOR PUBLICATION**

Distribution List

Everette L. Doffermyre
Doffermyre Shields Canfield & Knowles
1355 Peachtree St., N.E.
Suite 1900
Atlanta, GA 30309

Robert E. Shields
Doffermyre, Shields, Canfield
& Knowles, LLC
Suite 1900
1355 Peachtree Street, NE
Atlanta, GA 30309

Stephen S. Roach
Troutman Sanders LLP
Suite 5200, Bank of America Plaza
600 Peachtree Street, NE
Atlanta, GA 30308

Jaime L. Theriot
Troutman Sanders LLP
600 Peachtree Street
Suite 5200
Atlanta, GA 30308